○  FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

97 MAY -5  PM 2: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

CLARENCE BASKERVILLE,        }
                             }
     Plaintiff,              }
                             }
v.                           }        CASE NO. CV 95-B-1867-S
                             }
MARVIN T. RUNYON, Postmaster }
General of the United States,}        **ENTERED**
                             }
     Defendant.              }        **MAY 0 5 1997**

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment of defendant Marvin T. Runyon, Postmaster General ("Postmaster General"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the motion is due to be denied in part and granted in part.

Plaintiff, a black male born in 1936, commenced this action against the Postmaster General alleging race and age discrimination in his not being promoted to various positions in the course of a restructuring of Postal Service personnel in late 1992. Plaintiff also alleges that he was retaliated against because of a prior EEO complaint. Plaintiff asserts a separate cause of action for what can best be described as intentional infliction of emotional distress, and, finally, plaintiff alleges that defendants have breached plaintiff's contract of employment. Defendant has denied plaintiff's allegations. As to the race and age claims, defendant counters that its decisions with regard to the plaintiff were based on legitimate, non-discriminatory considerations. Furthermore, defendant claims that plaintiff did not properly exhaust his administrative remedies with regard to the retaliation and intentional infliction of emotional distress claims. Neither the plaintiff nor

*39*

the defendant made any argument with regard to plaintiff's breach of contract claim. The court is of the opinion that summary judgment is due to be denied with regard to plaintiff's race discrimination claims, but summary judgment is due to be granted with regard to the age discrimination, retaliation, intentional infliction of emotional distress and contract claims.

## FACTUAL SUMMARY

Plaintiff is a black male born on January 11, 1936. (Compl. ¶ 3; Pl.'s Dep. I[1] at 5). At the time of the relevant employment decisions, plaintiff was approximately 56 years old. (Pl.'s Aff. ¶ 11). He was initially hired by the United States Postal Service ("Postal Service") in 1957 as a mail handler in Birmingham, Alabama and has progressed through the system since then. (Pl.'s Aff. ¶¶ 1-2; Pl.'s Dep. I at 8). Plaintiff has been in the Maintenance Department since 1970, and in 1984 plaintiff was promoted to line supervisor of the Maintenance Department. (Pl.'s Aff. ¶ 2). Plaintiff apparently held that position at the time that the decisions at issue in this case were made.

In August 1992 the Postal Service began a "major restructuring." (Def.'s Ex. C, Declaration of Robert Yarbro ("Yarbro Dec.") ¶ 2). In an effort to reduce the number of overhead employees (those not involved in processing mail), all jobs within the Postal Service, except station managers and postmasters, were abolished, and a new administrative structure was established. (*Id.*) The Postal Service offered early retirement to those eligible and then placed the remaining employees in the same or some new job. (*Id.*) The employment decisions regarding plaintiff were made in the course of this restructuring.

---

[1] Plaintiff's deposition exists in two volumes. For purposes of brevity, "I" will denote Volume I and "II" will denote Volume II.

2

As a result of the restructuring, Robert Yarbro became the Manager of Maintenance and was responsible for filling the supervisor and manager positions at issue in the present case. Supervisor and manager positions are designated by "EAS" numbers which denote a level of seniority and pay. Mr. Yarbro was responsible for filling the Manager, Maintenance Operations (EAS 20), the Maintenance Engineering Specialist (EAS 18) and the Manager, Maintenance Operations Support (EAS 17) positions at issue in this litigation. (Yarbro Dec. ¶ 3). During Yarbro's tenure at the post office, he has made 26 selections for EAS level positions. Of those decisions, 12 were made in favor of black employees and 14 were made in favor of white employees. (Yarbro Dec. ¶ 4).

At the time of the restructuring, the Postal Service issued placement instructions for its field offices and placement officials. (Pl.'s Ex. 17). These placement instructions stated: "The placement official will consider affected employees with levels three grades below or above the level of the vacancy in his or her pool for vacancies in the successor unit." (Pl.'s Ex. 17 at 6). These instructions also included the following directive: "All maintenance jobs will be initially limited to current maintenance managers and supervisors within the district area who are in the three grade range." (Pl.'s Ex. 17 at 23). The three grade range rule was not inflexible, however, as the placement official could get "special permission" to place people from outside the three grade limit. (*See* Dep. of Rose Jones[2] ("Jones Dep.") at 50).

---

[2] Rose Jones is a Senior EEO Complaints Processing Specialist (EAS 19) for the Postal Service in Birmingham (Jones Dep. at 7). She has had this position since the restructuring. (*Id*. at 7-8). Prior to restructuring, she was an EEO counseling investigator. (*Id*. at 8).

3

Yarbro stated that it was not his understanding of the requirement of limiting maintenance jobs initially to current managers and supervisors that he was not allowed to pick people outside of the maintenance department to fill vacancies in that department. (Yarbro. Dep. at 171-72). According to Yarbro, his understanding was that he was to take the people who were without a job due to the restructuring and to place them into positions for which they had the functional expertise. (*Id.*) When pressed on this issue, Yarbro responded: "I mean, if that's not the way it was, I . . . must have made a mistake, but I don't . . . see it as a mistake at all." (Yarbro Dep. at 172).

The positions at issue in this case are the same for both the race and age discrimination claims. Jim Weathers and William R. Smith were placed in the Manager, Maintenance Operations (EAS 20) positions, Tim Joiner was placed in the Maintenance Engineering Specialist (EAS 18) position, and Billy Lawley was placed in the Manager, Maintenance Operations Support (EAS 17) position. (Pl.'s Ex. 12; Def.'s Ex. F).

Jim Weathers is a white male, (Pl.'s Dep. II at 35), who was approximately 53 years old[3] at the time the relevant employment decisions were made. He had almost 33 years of service with the Postal Service at the relevant time period, and prior to his placement during the restructuring, he was the Manager, Operations Quality Improvement (EAS 19). (Pl.'s Ex. 11).

---

[3] Despite the fact that a major portion of this action involves claims under the ADEA, neither party has introduced into evidence the birth dates or ages of the men placed into the positions about which plaintiff complains. Plaintiff did state that Weathers was younger than he, but nowhere does he say by how much. Defendant contends that Weathers was 53, and plaintiff has not offered anything to dispute that.

4

William R. Smith is a white male, (Pl.'s Dep. II at 35), who is older than plaintiff.[4] He had more than 20 years of service in the Birmingham Post Office and was Superintendent of Maintenance (EAS 17) prior to his placement during the restructuring. (Pl.'s Ex. 10).

Tim Joiner is a white male, (Pl.'s Dep. II at 35), who was approximately 40 years old at the time of the restructuring.[5] He had worked for the Postal Service for more than 10 years by the end of 1992, and was a Postal Operations Specialist (EAS 17) in the Birmingham Engineering Technical Unit prior to the restructuring. (Pl.'s Ex. 8). Joiner had extensive experience in the maintenance department prior to his work in the Engineering Unit. He was in the maintenance department from March 1982 to August 1989, and from October 1989 to January 1991 he was Supervisor Maintenance, MPE (EAS 16). (*Id.*) Joiner has an AAS in Electronic Engineering from Jefferson State Junior College and has taken numerous training courses during his employment at the Postal Service. (*Id.*)

Billy Lawley is a white male (Pl.'s Dep. II at 35), who was approximately 40 years old[6] when he was placed in the Manager, Maintenance Operations Support (EAS 17) position. He had 19 years of experience with the Postal Service at the time of that placement. (Pl.'s Ex. 9). Prior to his placement in December 1992, Lawley was Supervisor, Maintenance Detached Units (EAS

---

[4] Again, because no evidence of Mr. Smith's specific age was introduced by either party, the court does not know how old Mr. Smith is. Nonetheless, plaintiff concedes in his brief that Smith is older than plaintiff, and defendant contends that Smith was 59 at the time of the relevant decisions. Because it is not disputed that plaintiff was younger than Smith, the court will accept that as fact.

[5] The court's knowledge as to Joiner's specific age suffers from the same infirmity as the court's knowledge as to the other ages at issue in this action.

[6] See previous footnotes.

5

16). (*Id.*) Lawley has a Certificate from Bessemer State Technical College in Air Conditioning and Refrigeration. (*Id.*) Lawley was both a Maintenance Control Clerk and a Maintenance Control Technician, (*Id.*), where he became familiar with the national maintenance and control systems of the Postal Service. (Yarbro Dep. at 174).

## A. Race Discrimination

Prior to the decisions on the four positions at issue in this case, plaintiff and Yarbro had a discussion about other placement opportunities and about the positions at issue here. According to plaintiff, during this discussion Yarbro told plaintiff that Yarbro did not expect plaintiff to get any of the four positions "because the white employees would not accept [plaintiff] in that position." (Pl.'s Aff ¶ 12; Pl.'s Dep. II at 42). When asked during his deposition whether he was paraphrasing or not, plaintiff responded: "As far as I can recall at this time, he said to me that, 'they will not accept you.'" (Pl.'s Dep. II at 42.) Defendant did not press plaintiff any further on this issue during his deposition. Defendant has submitted plaintiff's responses to defendant's interrogatories in which, when asked to give the substance of any statements showing racial (or other) animus, plaintiff stated: "Among other statements, Robert Yarbro made the statement to Plaintiff that Plaintiff was not being promoted because Plaintiff would not be accepted in a high level position [because of his race]." (Def.'s Ex. K at 12) (brackets in original). Finally, no mention of any such statement was made in plaintiff's informal EEOC complaint or in the EEO counselor's report attached to that complaint. (*See* Def.'s Ex. H-2).

## B. Age Discrimination

In his affidavit, plaintiff contends that Yarbro urged him to retire in the midst of the restructuring. Specifically, plaintiff stated:

6

> Yarbro also told me that I was eligible for retirement.  I told him I was not
> interested in retiring.  He stated he was surprised, because he was sure that I was
> going to retire.  I told him I had no intentions of retiring.  Yarbro then strongly
> suggested to me that because I was eligible for retirement that was an option that
> I should explore.

(Pl.'s Aff. ¶ 12).  Plaintiff did not once mention this urging by Yarbro during his deposition despite being asked numerous times questions similar to, "tell me how you believe age was a factor in your not receiving the promotion . . . ."  (*See* Pl.'s Dep. II at 56-57, 67).

Yarbro stated that he placed Joiner in the Maintenance Engineering Specialist (EAS 18) position because he considered Joiner to be the best qualified based on Joiner's experience and computer knowledge and ability, including his technical and software knowledge.  (Yarbro Dep. at 221).  Yarbro stated that Lawley was selected for the Manager, Maintenance Operations Support (EAS 17) position because he was more qualified than plaintiff based on Lawley's experience with the national maintenance and control systems "and his overall expertise in the area."  (*Id*. at 173-74).  Yarbro explained that Lawley had been both a clerk and a technician in that area.  (*Id*. at 175).  He stated that the national maintenance and control system was: "the controlling factor.  It controls the routes, the parts, the routing, the . . . equipment files, everything in the maintenance control area [was] based on the national maintenance control . . . ."  (*Id*.)  Yarbro elaborated: "the national maintenance and control system really explains what . . . maintenance control or maintenance operation support is about.  That is the process that everything comes out of, that there area."  (*Id*. at 176).

When plaintiff was asked during his deposition to state the reasons he felt he was being discriminated against on the basis of his age as to the position Tim Joiner received, he stated:

7

"Mr. Timothy Joiner at the time that I applied for the position, I was 58 years old,[7] and just looking at Mr. Joiner from his appearance, which I would see him, he seemed like he was younger than I am." (Pl.'s Dep. II at 56). With regard to Mr. Weathers, plaintiff stated: "Again, at the time that I applied for the position, I was 58 years of age." (*Id*. at 57). When asked if he was aware that Weathers was approximately 55 years old, plaintiff stated that he was not so aware. (*Id*.) When asked about age discrimination for the position Mr. Lawley received, plaintiff responded: "At the time that I applied, I was 58 years of age, and seeing Mr. Lawley outwardly I feel like he was much younger than I am." (*Id*. at 67).

When asked to offer specifics concerning his qualifications that made him a better candidate for the various positions at issue here, plaintiff could not or would not offer any specifics. For example, when asked why he felt like he was more qualified than Mr. Joiner, plaintiff responded:

> I feel like I'm more qualified than Mr. Joiner because of my education, because of my specialized training for the position and because of my years in service. The fact that I was in the maintenance department when the position was awarded and Mr. Joiner wasn't.
> Therefore, I feel like I have more update training in the maintenance section. I feel like again Mr. Joiner was awarded this job and race was a factor in it.

(Pl.'s Dep. at 48). As far as the court is aware, plaintiff did not state anything more specific at any point during his deposition as to why his education and training was superior to that of the people who received the positions at issue. (*See* Pl.'s Dep. at 35-40, 56-58). Aside from

---

[7] Plaintiff was actually 56 years old at the time the decisions were made. (Pl.'s Aff. ¶ 11; Pl.'s Dep. I at 5).

8

examining Joiner's and Lawley's application forms, plaintiff has not been in a position to evaluate the experience, skills and abilities of Joiner or Lawley. (Pl.'s Dep. at 50, 60).

Plaintiff did submit his "991,"[8] which is a Postal Service application form, and the 991s for those who received the various positions. These forms show the relevant training and experience of the various applicants for these positions. (Pl.'s Exs. 7-11). The court will not restate all of this information here, but will address particular aspects below.

Plaintiff also submitted a number of his evaluation forms from recent years. The most recent evaluation form he submitted, however, was completed in 1993. (*See* Pl.'s Ex. 5). Because the decisions at issue were all made in late 1992, this last form was not available for consideration at the time the decisions were made, and the court did not consider this evaluation in reaching its conclusion.

In 1992, plaintiff received an overall evaluation of "Good" with the following comment: "Mr. Baskerville completes all of his assigned work timely. He is very safety conscious and keeps his employees informed on safety. He assigns work fairly to all employees. His workhour reports are timely and complete." (Pl.'s Ex. 5). Not all of the comments regarding plaintiff were positive, however. In evaluating whether plaintiff treats others with dignity and respect, the evaluator[9] wrote: "Mr. Baskerville needs to improve in the way he approaches and speaks to his

---

[8] Plaintiff actually submitted two 991s. One contains information through 1995 and is for an opening that "closed" on August 21, 1996. Obviously, this form is not the one considered by Mr. Yarbro in making his decisions. Therefore, the court will consider the second 991 submitted by plaintiff which contains the information that Mr. Yarbro would have considered in 1992. (Pl.'s Ex. 7; Def.'s Ex. E-5).

[9] The evaluator was W.R. Smith, who received one of the positions at issue in this litigation.

9

employees." (Pl.'s Ex. 5). As to plaintiff's ability to "[c]reate an atmosphere for open and honest two-way communication with [his] subordinates and peers," the evaluator wrote: "Mr. Baskerville needs improvement in this area. Most of his subordinates and peers would prefer not to communicate with him at all." (Pl.'s Ex. 5). The evaluation also stated that plaintiff needed some improvement in the area of "Promotion of cooperative labor/management relations." (Pl.'s Ex. 5). Plaintiff apparently improved in these areas over the course of the year, based on his 1993 evaluation, but that evaluation was not available at the time the relevant decisions were made. No evaluations for the people who actually received the positions at issue were submitted by either party.

## C. Retaliation

Plaintiff filed an informal EEO complaint in November 1991 and a formal EEOC complaint in March 1992. (Pl.'s Ex. 14). In 1993 plaintiff filed an additional informal complaint that is the basis for the present litigation. (Def.'s Ex. H-2). Plaintiff did not mention retaliation as a basis for his claim within the 1993 informal complaint or during the interview process. (Def.'s Exs. H-1 & H-2). Additionally, in a letter to plaintiff dated December 3, 1993, the Postal Service outlined the scope of the EEO investigation that would arise from his January 1993 complaint. This letter did not mention retaliation, and, although given the opportunity, plaintiff did not object to this characterization of his complaint. (Def.'s Ex. H ¶ 4; Def.'s Ex. H-1).[10]

---

[10] The letter, addressed to plaintiff, stated, in part:

We have received the above-referenced complaint of discrimination filed on August 2, 1993. Your complaint has been accepted for investigation. The scope of the investigation will include the following issue(s) only:

10

**D.  Intentional Infliction of Emotional Distress**

Rosa Jones, paralegal specialist in the law department of the Chicago Field Office of the United States Postal Service, who is responsible for logging tort claims presented to that office, stated as follows:

> A search of the records maintained in the Law Department--Chicago Field Office fails to reveal that Plaintiff, Clarence Baskerville, or a duly authorized agent or legal representative, has, prior to the filing of the captioned suit, presented to the Postal Service an executed Standard Form 95 (Claim for Damage, Injury or Death) or other written notification of an incident accompanied by a claim for money damages in a sum certain on behalf of Clarence Baskerville . . . .

(Def.'s Ex. I, Declaration of Rosa Jones, ¶ 1).  Plaintiff has offered no evidence to contradict that statement.

**E.  Breach of Contract**

Neither party presented any specific evidence with regard to the breach of contract claim.

---

| | |
|---|---|
| Specific Issue(s): | Failure to be selected for the position of Manager Maintenance Operations, EAS-20, Maintenance Engineering Specialist, EAS-18, and Maintenance Operations Support, EAS-17 |
| Date(s) of Incident: | January 9, 1993 |
| Type(s) of Discrimination: | Race (African American), age (not identified) |

If you disagree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing, within seven (7) calendar days of your receipt of this letter.

(Def.'s Ex. H-1).

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman.* 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

12

are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### A. Race Discrimination

Plaintiff has presented evidence that, if believed, would constitute direct evidence of race discrimination. The court is extremely wary of this evidence, however, because a statement as damning as the one alleged here would ordinarily be presented more forcefully from the beginning. If Mr. Yarbro in fact stated that plaintiff would not get the positions at issue "because the white employees would not accept" him in those positions, it would be reasonable for plaintiff to have waved such a smoking gun vigorously from the beginning. Yet, in plaintiff's interrogatory answers, it was "[because of race]" rather than the quote that later appeared in plaintiff's affidavit. When pressed slightly at his deposition, plaintiff used "they" rather than "the white employees." Furthermore, no mention of such a statement was made in plaintiff's informal EEOC complaint or in the accompanying EEO counselor's report. Thus, one could conclude that plaintiff converted his own inference ("they" meant "the white employees") into a statement of fact, perhaps to strengthen his case. Nonetheless, the court cannot say that plaintiff's affidavit so contradicts his earlier sworn testimony that it is due to be stricken. *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1537 (11th Cir. 1987) (differences between deposition testimony and affidavit go to the weight of the evidence and create an issue of credibility where they are not "blatantly inconsistent"); *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir.

13

1986) (affidavit that conflicts with deposition testimony should be considered where it is not "inherently inconsistent" with the deposition testimony); *Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (holding that where a party has given "clear answers to unambiguous questions," the court may disregard as a sham an affidavit that "merely contradicts, without explanation, previously given clear testimony"). Because reasonable inferences must be drawn in the plaintiff's favor, the court is of the opinion that the motion for summary judgment is due to be denied as to plaintiff's race discrimination claim.[11] At trial, however, if it appears that direct evidence does not exist, a directed verdict may be appropriate.

## B. Age Discrimination

Plaintiff alleges that he was not promoted to the positions at issue because of age discrimination. A plaintiff may establish a prima facie case of age discrimination by: 1) direct evidence of discriminatory intent; 2) statistical proof of a pattern of discrimination; or 3) meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[12] *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.

---

[11] The court reaches this conclusion also despite the fact that plaintiff's poorly worded complaint does not specifically allege race discrimination in violation of Title VII. Where it specifically alleges race discrimination, the complaint cites 42 U.S.C. § 1981. (Compl. ¶ 11). Title VII, however, provides the exclusive remedy for a federal employee alleging race discrimination. *See Brown v. Gen. Services Admin.*, 425 U.S. 820, 835 (1976).

[12] *McDonnell Douglas Corp. v. Green* was a Title VII case. However, the mechanisms set forth in that case to prove discrimination through circumstantial evidence govern age discrimination cases. *See, e.g., Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1385-86 (11th Cir.), *cert. denied*, 464 U.S. 1018 (1983).

14

1989), *cert. dismissed*, 493 U.S. 1064 (1990). Plaintiff has not presented any statistical evidence of a pattern of age discrimination.

The record does not contain any direct evidence of age discrimination, either. Plaintiff's disingenuous argument that direct evidence of age discrimination exists is without merit. Plaintiff argues that Yarbro's "strongly suggesting" that plaintiff retire early combined with his statement that the other employees would not accept him in the relevant positions constitutes direct evidence of discrimination. Plaintiff's argument is flawed for two reasons. First, the two elements combined do not constitute direct evidence of age discrimination. Direct evidence of discrimination is evidence that, if believed, "'would prove the existence of a fact [in issue] *without inference or presumption.*'" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (alteration in original) (citation omitted). "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination.'" *Id.* (alterations in original) (citation omitted). Furthermore, as the court noted in *Earley*, accomplishing a reduction in force "by natural attrition and voluntary early retirement is lawful." *Id.* at 1082. "Evaluations of the age of the work force as part of a restructuring and reduction-in-force plan are indicative of thorough business planning and are not direct evidence of discriminatory intent." *Id.* Thus, assuming that Yarbro did urge plaintiff to retire, such urging is not **direct** evidence of age discrimination.

Second, plaintiff's argument is disingenuous because it is not accurate. Plaintiff argues that it is the strong suggestion that he retire combined with the statement that the other employees would not accept him in those positions that constitutes the direct evidence. Yet, according to the plaintiff's own assertion, Yarbro allegedly said that the "white employees" would not accept him

15

in those positions. It is axiomatic that this is not evidence of **age** discrimination. Plaintiff's attempt to have that one doubtful statement prove his whole case lacks candor and is without merit.

Thus, plaintiff must prove his case by circumstantial evidence, if at all. Under the *McDonnell-Douglas* framework as applied to the ADEA, a prima facie case of age discrimination may be established by presenting "sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 440 (11th Cir. 1996).[13] Essentially, plaintiff must show that he (1) was between the ages of 40 and 70, inclusive; (2) was adversely affected by his employer's employment decision; and (3) was qualified to do the job at issue. *Id.*; *see Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992). The employment decision need not have been made in favor of someone outside the protected age group (less than 40 years old), *O'Connor v. Consol. Coin Caterers Corp.*, 116 S. Ct. 1307, 1310 (1996), but if the person in whose favor the decision was made was "insignificantly younger" than the plaintiff, then the plaintiff cannot establish a prima facie case. *See id.* The burden of showing a prima facie case is light. *Isenbergh*, 97 F.3d at 439.

Once plaintiff has established a prima facie case, the defendant must articulate a legitimate non-discriminatory reason for its actions. *Isenbergh*, 97 F.3d at 440. The defendant's burden is one of production, not persuasion. *Id.* If the defendant carries its burden, then the plaintiff must

---

[13] *Isenbergh* involved a judgment as a matter of law under Rule 50 rather than summary judgment. *Id.* at 441. The Eleventh Circuit has held, however, that the summary judgment standard "mirrors" the standard under Rule 50(a). *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

16

prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are a pretext for age discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987). The plaintiff bears the burden of establishing pretext, and he must present "significantly probative" evidence to avoid summary judgment. *Isenbergh*, 97 F.3d at 444 (citations omitted). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Id*. (citation omitted). "'If the evidence is *merely colorable*, or is *not significantly probative*, summary judgment may be granted.'" *Earley*, 907 F.2d at 1080 (citations omitted).

In this case it is undisputed that plaintiff was in the protected age group and was adversely affected by defendant's employment decisions. Plaintiff was 56 years old at the time and was not chosen for any of the four positions at issue here. Smith, however, was older than plaintiff, and Weathers was roughly 53 years old at the time of the decisions. Thus, plaintiff has not established a prima facie case of age discrimination as to the two Manager, Maintenance Operations (EAS 20) positions.[14] Smith was older than plaintiff, and Weathers was "insignificantly younger" than plaintiff. Thus, summary judgment on plaintiff's age discrimination claim with regard to these two positions is due to be granted.

---

[14] Plaintiff argues that the fact that Weathers was promoted from outside the maintenance department in apparent violation of the restructuring guidelines was evidence of age discrimination. Aside from the flaw in an argument that decries violating these guidelines while it insists that they be violated (plaintiff was outside the three grade range), such an apparent violation is not evidence of age discrimination. Yarbro's decision may have been a bad decision, or it may have been discriminatory on another basis, but because of the closeness in age of plaintiff and Weathers, no jury could reasonably conclude that the decision was based on age.

17

Plaintiff has established a prima facie case of age discrimination with regard to the Maintenance Engineering Specialist (EAS 18) and the Manager, Maintenance Operations Support (EAS 17) positions given to Joiner and Lawley, respectively. Plaintiff was within the protected age group, he was not chosen for these positions, he was qualified for the positions, and both people who were placed in these positions were substantially (approximately 16 years) younger than plaintiff. These facts are sufficient to raise an inference that age was a factor in the employment decision.

Defendant has met its burden of articulating legitimate, non-discriminatory reasons for its actions, however. Defendant contends that Joiner and Lawley were better qualified than plaintiff for the positions into which those two were promoted, and defendant has presented evidence to that effect. Joiner has an Associate Degree in Electronics Engineering while plaintiff has only certificates in Electronics. Yarbro also picked Joiner based on his computer knowledge and ability including his software and technical knowledge. Furthermore, although Joiner was not in the maintenance department at the time the decision was made, he had extensive experience in the maintenance department, and Yarbro was under the impression that he could choose from those who had the functional expertise to perform the duties of the chosen position. Lawley was chosen for his promotion because Yarbro considered him the best qualified based on his experience, both as a clerk and as a technician, with the national maintenance and control systems. These are legitimate, non-discriminatory reasons for the decisions made by defendant.

Plaintiff has not met his burden of showing pretext, however. Plaintiff asserts that defendant's reasons are pretext because plaintiff was the best qualified and because Joiner was promoted from outside the maintenance department. Plaintiff also argues that he was given

18

inaccurate ratings on the matrix used to compare plaintiff and Lawley to determine which would receive the Manager, Maintenance Operations Support position. None of these assertions regarding pretext is sufficient for plaintiff to meet his burden to survive summary judgment.

Plaintiff has asserted that he was at least as qualified or better qualified than Lawley or Joiner for the positions at issue. Plaintiff could not point to specific reasons that he was more qualified, however. Plaintiff only stated that based on his education and training, he felt like he was more qualified that Joiner and Lawley. Furthermore, plaintiff does not have sufficient knowledge of Joiner and Lawley to evaluate their abilities. Plaintiff's conclusory allegations that he was more qualified are not sufficient to meet his burden, and plaintiff has not produced "significantly probative" evidence that Joiner and Lawley were not more qualified. In addition, in the absence of further evidence of discrimination, the court's role is not to "sit as a sort of 'super personnel officer' . . . correcting what the judge perceives to be poor personnel decisions." *See Shealy v. City of Albany, Ga.*, 89 F.3d 804, 806 n.6 (11th Cir. 1996) (discussing reverse discrimination claims of white fire fighters). The court's role is not to "second guess the wisdom of [the defendant's] reasoning, but to determine if the reasons given were merely a cover for a discriminatory intent." *See Brown v. American Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir. 1991) (discussing decision to award contract to white rather than black franchisee), *cert. denied*, 502 U.S. 1058 (1992). Here, plaintiff has merely challenged the wisdom of the decision, claiming that he was more qualified. Aside from not presenting significant evidence to that effect, the difference in qualifications is not so significant as to show pretext.[15]

---

[15] Plaintiff's attack on the wisdom of these decisions is complicated by the fact that the decision-maker, Yarbro, made two of the four decisions at issue here in favor of men roughly

19

Plaintiff also contends that Joiner should not have been promoted to the Maintenance Engineering Specialist position because he was outside the maintenance department at the time of the promotion. As discussed above, however, Yarbro did not read this requirement to preclude him from considering people with the requisite "functional expertise." Plaintiff has not presented evidence to bring Yarbro's explanation into doubt.

Finally, plaintiff argues that he was underrated in the matrix used to compare him with Lawley. At oral argument, plaintiff contrasted this matrix with his evaluation form from January 1993. This evaluation form was not available when the decisions were made in December 1992, however. Furthermore, Yarbro was basing his decision on the application form from 1992, not the one plaintiff submitted for a position in 1996. Finally, assuming that plaintiff was underrated on this matrix, plaintiff has not shown that this is evidence of age discrimination. Plaintiff still has not shown that he was more qualified or that the reasons given for the decisions were pretext. As the Eleventh Circuit has recently stated:

[I]n considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's overall justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification itself.

*Isenbergh*, 97 F.3d at 436. Plaintiff has failed to reach this threshold; he has not "call[ed] into question the veracity of defendant's ultimate justification." Therefore, defendant's motion for summary judgment on these remaining age discrimination claims is also due to be granted.

_____

plaintiff's age. This fact is additional evidence that Yarbro's decisions were not improperly based on age.

20

## C. Retaliation

Plaintiff alleges that he did not receive the promotions in issue here in retaliation for filing an informal EEO complaint in November 1991 and a formal EEOC complaint in March 1992. Plaintiff did not include retaliation as one of the elements of the EEOC complaint that he filed as a precedent to the instant case, but plaintiff contends that inclusion in his EEOC charge was not necessary for him to be allowed to prosecute that claim here. Because the court disagrees with plaintiff and concludes that plaintiff should have included retaliation as part of the charge underlying the present litigation, the court is of the opinion that the defendant is entitled to summary judgment on plaintiff's retaliation claims.

A federal employee "must timely exhaust administrative remedies before filing an employment discrimination suit under Title VII." *Thompson v. West*, 883 F. Supp. 1502, 1506 (M.D. Ala. 1995) (citing *Brown v. General Serv. Admin.*, 425 U.S. 820, 829-32 (1976)). In the absence of some justifiable suspension of the exhaustion requirement, a plaintiff's failure to exhaust his administrative remedies is grounds for judgment as a matter of law for the defendant. *See Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986); *Thompson*, 883 F. Supp. at 1506-07 (citation omitted). Failure to file a timely EEOC complaint is one way in which a plaintiff would fail to exhaust his or her administrative remedies. *See Manning*, 786 F.2d at 1108; *Thompson*, 883 F. Supp. at 1507.

Plaintiff argues that his failure to include the charge of retaliation in the EEOC complaint underlying this action should not be fatal to his retaliation claims. The plaintiff's argument is that he orally stated that defendants were retaliating against him and that this is sufficient. Plaintiff's argument misapplies the law, however. The plaintiff may pursue in court only those claims that

21

are within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir.) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)), *cert. denied*, 115 S. Ct. 298 (1994); *accord Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (citations omitted). Plaintiff's "charge of discrimination" did not include any claim for retaliation for having filed a previous EEOC complaint.[16] Prior retaliation was not within the scope of the investigation that one would reasonably expect to grow out of a charge of race discrimination. Plaintiff was required to state that he had been retaliated against, and plaintiff failed to do so. Furthermore, when apprised of the scope of the EEO investigation arising out of his 1993 complaint, plaintiff made no objection on the basis that retaliation was not included within the scope of that investigation. Plaintiff's alleged oral statement to an EEO counselor that he was the victim of retaliation did not relieve plaintiff of his obligation to ensure that his administrative remedies were exhausted prior to filing suit. Therefore, the court is of the opinion that the defendant is entitled to summary judgment on plaintiff's retaliation claims.

## D. Intentional Infliction of Emotional Distress

The plaintiff did not state the jurisdictional basis for his infliction of emotional distress claim, but the court is of the opinion that a tort claim such as this could be pursued against the

---

[16] It is true that a plaintiff need not file a separate EEOC charge in order to bring a claim of retaliation "where the claim 'grows out of an administrative charge that is properly before the court.'" *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 762 (11th Cir. 1995) (citation omitted). In the present case, however, the EEOC charge for which plaintiff claims he has been retaliated against is not "properly before the court." Thus, plaintiff was required to file an administrative charge of retaliation.

22

defendant only under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 2671-80, if at all.[17]

Section 2675 of title 28 states the following:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675(a). The requirement of § 2675 "is jurisdictional and cannot be waived." *Lykins v. Pointer Inc.*, 725 F.2d 645, 646 (11th Cir. 1984). Because plaintiff has not complied with this provision of the FTCA, plaintiff's tort claim is due to be dismissed.

**E. Breach of Contract**

The Supreme Court has held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Services Admin.*, 425 U.S. 820, 835 (1976). The same is true for claims by federal employees under the ADEA. *See Paterson v. Weinberger*, 644 F.2d 521, 525 (5th Cir. 1981).[18] *See also Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991) (holding that it "is undisputed that the ADEA provides the exclusive remedy for a federal employee who claims age discrimination"). Plaintiff has not alleged or argued any basis for his breach of contract claim other than discrimination, and the court is of the

---

[17] As will be discussed below, Title VII and the ADEA provide the exclusive remedies for race and age discrimination by federal employers against federal employees. Arguably, this exclusion forecloses plaintiff's tort claim. Because it is not necessary for the court to address this issue, however, it will not do so.

[18] Because *Paterson* was decided prior to October 1, 1981, it is binding precedent in the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

23

opinion that this breach of contract claim is simply the same discrimination claims renamed. Accordingly, plaintiff's breach of contract claim is due to be dismissed.

## CONCLUSION

Based on the foregoing, the court is of the opinion that defendant's motion for summary judgment as to plaintiff's race discrimination claims is due to be denied, and defendant's motion for summary judgment with regard to plaintiff's age discrimination, retaliation, intentional infliction of emotional distress, and breach of contract claims is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 5th day of May, 1997.


**SHARON LOVELACE BLACKBURN**
United States District Judge

24